IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| SHAAN SCHAEFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:18-cv-1532-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| HEIDI D. WILLIAMS, MD, LLC, d/b/a | ) | |
| HEIDI WILLIAMS PLASTIC SURGERY & | ) | |
| RECONSTRUCTIVE SURGERY, and HEIDI | ) | |
| D. WILLIAMS, M.D., individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on defendant Heidi D. Williams, MD, LLC and Heidi D. Williams, M.D.'s (collectively, "Williams") motion to exclude and motion for summary judgment, ECF No. 39; and on Shaan Schaeffer's ("Schaeffer") motion in limine, ECF No. 43. For the reasons set forth below, the court denies Williams' motion to exclude and motion for summary judgment and grants in part, denies in part, and takes under advisement in part Schaeffer's motion in limine.

## I. BACKGROUND

This medical malpractice action arises from a cosmetic surgical procedure performed by Williams on Schaeffer on November 23, 2016. During the procedure, Williams performed a facelift, bilateral upper lid blepharoplasty, and abdominoplasty. Schaeffer alleges that Williams performed the facelift negligently, causing thick scarring behind her ears and leaving excess skin under her chin. Even after following the post-operation treatment regime recommended by Williams for several months, Schaeffer

1

claims, her condition did not improve. Therefore, she opted to undergo corrective surgery to the affected areas on April 5, 2018.

On June 5, 2018, Schaeffer filed this lawsuit against Williams, alleging negligence. ECF No. 1. A trial is scheduled for March 16, 2020. On December 31, 2019, Williams filed a motion to exclude expert testimony and for summary judgment. ECF No. 39. Schaeffer responded to the motion on January 14, 2020, ECF No. 47, and Williams replied on January 21, 2020, ECF No. 51. On January 28, 2020, with permission from the court, Schaeffer filed a sur-reply. ECF No. 54. On January 9, 2020, Schaeffer filed a motion in limine to exclude certain evidence. ECF No. 43. On January 23, 2020, Williams responded to the motion in limine, ECF No. 53, to which Schaeffer replied on January 30, 2020, ECF No. 55. The court held a hearing on the motions on February 18, 2020. Thus, these matters have been fully briefed and are now ripe for the court's review.

## II. DISCUSSION

**A. Williams's Motion to Exclude Dr. Hultman**

Williams's motion asks the court to exclude the testimony of Schaeffer's expert, Dr. C. Scott Hultman ("Dr. Hultman"). Williams argues that (1) Dr. Hultman is not qualified to testify in the area of facelifts because his testimony is unreliable under Daubert and (2) Dr. Hultman's testimony is conclusory and "grounded in res ipsa loquitor." ECF No. 39 at 1. Because neither ground warrants exclusion, the court denies Williams's motion to exclude.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

2

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, Rule 702 requires a two-part analysis. First, the court must determine whether a witness is qualified to testify as an expert on scientific, technical, or other specialized knowledge based on his or her knowledge, skill, experience, training, or education. Then, the court must consider whether the testimony of the qualified expert is reliable and relevant to the facts of the case under Daubert v. Merrell Dow Pharmas., Inc., 509 U.S. 579 (1993).

As an initial matter, it is worth pointing out that Williams's motion fails to distinguish the two steps required by Rule 702. The law is clear. First, the court must determine whether Dr. Hultman is qualified to testify as an expert based on his knowledge, skill, education, experience, or training. This analysis is unaffected by the Supreme Court's holding in Daubert and only requires a showing that an expert will be helpful to the jury in in area of scientific or specialized knowledge. See Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993); see also Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (". . . a broad range of knowledge, skills, and training qualify an expert."). Next, the court must exercise its gatekeeping authority and determine whether Dr. Hultman's opinions are reliable and relevant under Daubert. The standard for whether a witness is qualified as an expert is a much lower bar than whether certain expert testimony is admissible under Daubert.

Willaims's motion often conflates Rule 702's two steps, arguing that Dr. Hultman is unqualified to testify because his opinions are unreliable or that his lack of reliable methodology renders his opinions "conclusory res ipsa." ECF No. 39 at 12. As such, the court categorizes the contents of Williams's motion to exclude into three arguments for exclusion: (1) that Dr. Hultman is not qualified to testify as an expert, (2) that Dr. Hultman's opinions are unreliable under <u>Daubert</u>, and (3) that Dr. Hultman's testimony will not be helpful to the jury because it is evidence that supports a theory of res ipsa loquitor. The court addresses each ground for exclusion in turn.

### 1. Dr. Hultman's Qualification as an Expert

Williams argues that Dr. Hultman is not qualified to testify because he lacks the requisite experience in performing the facelift procedure that Williams performed on Schaeffer. The court disagrees.

A witness's qualifications to render an expert opinion are "liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." <u>Kopf v. Skyrm</u>, 993 F.2d 374, 377 (4th Cir. 1993). Where the proposed expert's qualifications are challenged, "the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered" to be properly excluded. <u>Id.</u> "One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." <u>Id.</u> (citing <u>Thomas J. Kline, Inc. v. Lorillard, Inc.</u>, 878 F.2d 791, 799 (4th Cir. 1989), cert. denied, 493 U.S. 1073 (1990)).

Here, Shaeffer has retained Dr. Hultman as an expert to testify to the standard of care and Williams's alleged breach thereof. Dr. Hultman is a plastic and reconstructive surgeon at Johns Hopkins University and Hospital. He received his medical degree from the University of Pittsburg School of Medicine and is Board Certified in surgery, plastic surgery, and critical care surgery. Dr. Hultman is the current director of the Johns Hopkins Burn Center and serves as a professor of plastic and reconstructive surgery at Johns Hopkins School of Medicine. Before Johns Hopkins, Dr. Hultman was employed in various capacities at the University of North Carolina hospitals at Chapel Hill from 2000 to 2018, including work as a professor of surgery in the plastic and trauma, critical care, and burn surgery divisions and as the founder and director of the UNC Aesthetic and Laser Center.

The heart of Williams's objection to Dr. Hultman is that Dr. Hultman lacks the requisite experience performing facelifts to be qualified as an expert. There are several problems with this argument. First, experience is only one means by which a witness may be qualified to testify as an expert. See Fed. R. Evid. 704 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . . ."); see also Thomas J. Kline, Inc., 878 F.2d at 799 (". . . the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered" to be properly excluded.). Williams attempts to discount Dr. Hultman's experience performing facelifts without arguing that he is not otherwise qualified based on his skill, education, training, or knowledge. Although Williams argues that Dr. Hultman's experience fails to provide a reliable ground for his proffered testimony, she makes no argument as to why

Dr. Hultman is not otherwise qualified as an expert by way of his vast knowledge of cosmetic surgeries dealing with skin, his years of education in the field of plastic surgery, his years of training to become a plastic surgeon, or his demonstrable skill at the technique that his testimony concerns. Dr. Hultman's resumé makes clear that the court could qualify him as an expert on the topic of plastic surgery on any of these grounds.

Further, Williams's argument is based on the incorrect premise that Dr. Hultman must be qualified as to the specific procedure performed in this case to qualify as an expert. Not so. "One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." Thomas J. Kline, Inc., 878 F.2d at 799; see also Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) ("[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.").

Williams argues that only two of the 11,528 surgeries that Dr. Hultman has performed since 2008 were the exact procedure that Williams performed on Schaeffer in this case. However, Dr. Hultman's qualification as an expert witness does not hinge on his experience performing the exact procedure at issue. Dr. Hultman's testimony centers on a technique used by plastic surgeons in which a surgeon makes a series of incisions in the skin, removes portions of underlying tissue, pulls the skin over the affected area, and "anchors" its layers when closing the incisions to reduce tension for the purpose of minimizing the amount of scarring that will occur. This is a common technique employed in all types of cosmetic and restorative surgeries, including hundreds that Dr.

6

Hultman has performed. To be sure, an expert need not have performed a specific type of surgery to be qualified as an expert on a certain surgical technique. For these reasons, the court finds that Dr. Hultman is qualified to testify as an expert in the field of plastic surgery. The court thus rejects this ground for exclusion.

### 2. Reliability of Dr. Hultman's Testimony

As a second ground for exclusion, Williams argues that Dr. Hultman's testimony is unreliable under Daubert. Dr. Hultman will testify to his opinion that Schaeffer's scarring was caused by "too much tension and/or skin loss during the face and neck lift" procedure. ECF No. 39-1, Hultman Depo. 69:19–21. According to Williams, Dr. Hultman's opinion is merely "conclusory belief or speculation." ECF No. 39 at 10. In other words, Williams argues that Dr. Hultman's opinion is not supported by reliable principles and methodology. In response, Schaeffer argues that Dr. Hultman's opinion is supported by the "differential diagnosis" approach, which is well-accepted in the medical community. The court agrees with Schaeffer.

In Daubert, the Supreme Court charged district courts with the duty to serve as gatekeepers who must evaluate expert testimony before its presentation to the jury. Under Daubert, the court must address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," id. at 592–93, i.e., whether the testimony is reliable. The court should consider several nondispositive factors in determining the reliability of a particular scientific theory or technique: whether it (1)

can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593–94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular circumstances of the particular case at issue." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). The second inquiry "goes primarily to relevance." Daubert, 509 U.S. at 591. The court has a "special obligation" to ensure that expert testimony is both relevant and reliable. Kumho Tire Co., 526 U.S. at 147.

      Dr. Hultman's opinion is supported by the well-accepted method of differential diagnosis. Differential diagnostic procedure is a systematic diagnostic method in which a physician uses the process of elimination to identify a disease or the source of an adverse condition based on symptoms, test results, and the like. Not only is differential diagnosis a well-accepted technique in the medical community, but it is well-accepted in this circuit as a reliable method that provides a proper foundation for a physician's expert opinion under Daubert. "Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262 (4th Cir. 1999). "This technique has widespread acceptance in the medical community, has been subject to peer review, and does not frequently lead to incorrect results." Id. Thus, a "reliable differential diagnosis provides a valid foundation for an expert opinion." Id.

Nevertheless, Williams points to Cooper v. Smith & Nephew for the proposition that Dr. Hultman's differential-diagnosis-derived opinion is unreliable. 259 F.3d 194 (4th Cir. 2001). There, the Fourth Circuit reiterated its holding in Westberry, finding that differential diagnosis is generally a reliable basis for expert testimony. Id. at 202. However, the Fourth Circuit clarified that a "differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." Id. As a result, "if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony." Id. In that case, the Fourth Circuit excluded the opinions of an expert who "asserted what amounted to a wholly conclusory finding based upon his subjective beliefs rather than any valid scientific method." Id. at 200. Unlike Dr. Hultman's opinion, the expert in Cooper's opinions concerned the standard of care and "conflict[ed] with that of the FDA and the majority of his colleagues in the American Academy of Orthopedic Surgeons." Id. The court does not find the basis of Dr. Hultman's opinions so lacking.

Here, Dr. Hultman testified that Williams's performance fell below the standard of care:

> The standard of care for a facelift is to, essentially, leave the skin under minimal to no tension around the ear. And results that we see look like the maximum tension was placed, not only around the ear, but at the lobule. The skin itself can have significant tension, if it's placed in the scalp, in front of the ear or behind the ear.
>
> Secondly, based on the way her scars developed and appeared, the SMAS itself, which is the underlayer of the facelift, doesn't appear to have left the skin under minimal tension. So I understand that she did a SMAS plication, for example, anteriorly, in front of the ear, but there was no description of

9

> anything posterior or behind the ear. And even though these would be reasonable techniques to do for the SMAS, we still see the results of the scarring which was mostly prominent at the lobule and behind the ear. And, again, this is pathognomonic for too much tension and/or skin loss during the face and neck lift.

Hultman Depo. 60:2–21. It is clear the Dr. Hultman's opinion is not based on the mere existence of Schaeffer's scarring. Instead, his conclusions are based on the development and formation for the scars, the location of the scars around the ear, the technique of the surgery, and his general familiarity with scarring after cosmetic surgery procedures. Dr. Hultman also performed an independent medical evaluation on Schaeffer in June of 2019. Of course, Dr. Hultman's opinions are in part based on the scarring itself. It would make little sense for the court to find that Dr. Hultman's opinion is unreliable because it relies on the very injury Schaeffer claims. Indeed, the Supreme Court has noted that in medical cases, "conclusions and methodology are not entirely distinct from one another." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). This is especially true in the case of a differential diagnosis, which requires a physician to start with a symptom and work backwards to ascertain a cause through the process of elimination.

In addition, Dr. Hultman's conclusions are based on the consideration and elimination of other possible causes of Schaeffer's scarring.

> I considered other causes of these scars, including the fact that they are not located in an area of motion which can cause widened scarring as well. I also reviewed the medical records of Ms. Schaeffer's Primary Care Physician exchanged during discovery, and she suffers from no comorbidity which would cause the disfigurement she suffered to occur. The disfigurement and scarring were caused by the factors I set forth.

ECF No. 47-2, Hultman Aff. at ¶ 15. Dr. Hultman has satisfied the court that his differential diagnosis technique is reliable. See Westberry, 178 F.3d at 265 ("A medical expert's opinion based upon differential diagnosis normally should not be excluded

because the expert has failed to rule out every possible alternative cause of a plaintiff's illness.").

After his analysis and elimination of other potential causes and based on his analysis, Dr. Hultman concluded that the only plausible cause of Schaeffer's is Williams's deviation from the standard of care. Therefore, the court finds that Dr. Hultman's opinions are based upon more than the mere existence of Schaeffer's scarring. Instead, his conclusions are based on the details of the scaring, independent medical analysis, and his knowledge of and experience with plastic surgery scarring. Therefore, the court finds that Dr. Hultman's opinions are based upon a sufficiently foundation for expert testimony under <u>Daubert</u>.

### 3. Dr. Hultman's Testimony under Res Ipsa Loquitor

Williams's "res ipsa loquitor" argument is best understood as a relevance objection under <u>Daubert</u>. According to Williams, Dr. Hultman's testimony should be excluded because it is merely evidence of a res ipsa loquitor theory of recovery, which South Carolina does not recognize. Williams argues that Dr. Hultman's opinion is that the scarring itself is evidence of negligence on the part of Williams. Therefore, she contends, Dr. Hultman's opinion only provides the jury with evidence of negligence under a res ipsa loquitor theory and should thus be excluded. In other words, Williams argues that Dr. Hultman's opinion is irrelevant under <u>Daubert</u> because it is not helpful to the jury in determining the issue of causation. The court disagrees.

The second inquiry under <u>Daubert</u> "goes primarily to relevance." 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. <u>Id.</u> at

593. The Fourth Circuit has consistently endorsed the admission of differential-diagnosis-based expert testimony as evidence relevant to causation. See Benedi v. McNeil–P.P.C., Inc., 66 F.3d 1378, 1383–85 (4th Cir. 1995); see also Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999) (collecting cases). For the same reasons that the Fourth Circuit has found the differential diagnosis method reliable, it has found that differential-diagnosis-based testimony is helpful to the jury in determining the issue of causation.

Discussed above, Dr. Hultman arrived at his opinion after eliminating other plausible causes under the differential diagnosis method. For reasons similar to those described above, Dr. Hultman's opinion would be helpful to a jury in determining causation, and thus is relevant evidence of causation. His opinion is not merely based on res ipsa loquitor. Therefore, Dr. Hultman's opinion passes muster under Daubert and should be admitted. For these reasons, the court denies Williams's motion to exclude. Williams's motion for summary judgment was premised on Dr. Hultman's exclusion. Because the court denies Williams's motion to exclude, it accordingly denies Williams's motion for summary judgment.

**B. Schaeffer's Motion in Limine**

Schaeffer's motion in limine asks the court to exclude four categories of evidence: (1) evidence suggesting that Schaeffer could not be made happy or satisfied with the results of her surgery or other cosmetic surgeries, (2) evidence suggesting that Schaeffer is fixated on her physical appearance as a result of her mental health and/or unhealthy self-image, (3) testimony that Schaeffer has "scleroderma or any type of autoimmune disease", and (4) evidence suggesting that Schaeffer threatened to sue Williams after the

surgery. ECF No. 43 at 2. Because of the similarity of the first two categories of evidence, the court discusses them together and discusses the remaining two categories of evidence in turn.

### 1. Evidence of Schaeffer's Mental Health

Schaeffer argues that evidence of her mental health/incapability of being satisfied with cosmetic surgery is either inadmissible as hearsay or should be excluded under Rule 403 as unduly prejudicial. In response, defendants argue that evidence of Schaeffer's "state of mind regarding her physical appearance is absolutely relevant to the issues before the court in this trial." ECF No. 53 at 2.

Fed. R. Evid. 402 provides that all "relevant evidence is admissible unless" the Constitution, a federal statute, another Federal Rule of Evidence, or a rule prescribed by the Supreme Court "provides otherwise." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. One exclusionary rule to the general admissibility of relevant evidence is the rule against hearsay. Relevant hearsay evidence is not admissible under Fed. R. Evid. 802, unless an exception applies.

As an initial matter, the parties have agreed that the statements of Schaeffer's mother, who has not been identified as a witness in this matter, are inadmissible as hearsay. In a deposition, Williams testified that Schaeffer's mother "made the comment that she really hoped that for once Shaan [Schaeffer] could be happy after the surgery." ECF No. 43 at 2. For clarification's sake, the court finds that statements of Schaeffer's mother testified to by an in-court declarant are hearsay and thus inadmissible.

13

Additionally, Schaeffer asks the court to exclude all other evidence of Schaeffer's metal health or body-image fixation under Rule 403. Evidence of Schaeffer's mental health is not relevant to the issue of Williams's liability. Schaeffer's mental state is not probative of the standard of care or whether Williams breached that standard of care. Therefore, evidence of Schaeffer's mental health is not relevant to the liability phase of the trial. Whether the evidence is relevant to Schaeffer's claimed damages, however, is less clear. While Williams argues that Schaeffer has put her mental and emotional health at issue by claiming that she has suffered emotional harm, see ECF No. 53-2, Schaeffer Depo. 134:12–19, Schaeffer's complaint only seeks actual damages as a result of physical injuries and the cost of corrective surgery. She does not claim emotional injuries in her complaint. So long as Schaeffer does not testify as to her emotional damages at trial, evidence of her mental health is irrelvant. However, in the event that Schaeffer claims emotional harm as part of her damages, then evidence of her mental health would become relevant. Therefore, because of the contingent nature of the evidence and the lack of specificity with which Schaeffer identifies that which she seeks to exclude, the court grants this request in limine but will permit the parties to raise the issue at trial if need be.

**2. Evidence that Williams has Scleroderma**

Schaeffer also requests exclusion of any suggestion by Williams's expert, Dr. William Terranova ("Dr. Terranova"), that Schaeffer has scleroderma. Dr. Terranova will testify that the scarring behind Schaeffer's ears is not consistent with "hypertrophic" scarring, meaning scarring that arises from skin tension. As part of his theory, Dr. Terranova seeks to testify about other potential causes of the discoloration behind Schaeffer's ear. From Dr. Terranova's deposition:

> Q: So are you disputing that there's scar behind the ear?
>
> A: There shouldn't be scar behind the ear because the incision stopped at the lobule . . . I'm saying it may not be scar. I'm not saying it's not. I'm saying it just looks so atypical to me for what I would expect for a hypertrophic scar that I have to ask the question is this truly a scar … and the only way to know that is to feel it.
>
> Q: If it's not scar, what is it?
>
> A: It's a pigment change.
>
> Q: And what caused the pigment to change?
>
> A: I don't know…But it's – again, we're back to what caused this to begin with. Is it possible infection? Perhaps.
>
> Is it some possible skin problem, that she has some underlying skin problem, like some auto autoimmune problem like scleroderma, for example, where people -- that's what happens to people with scleroderma when they have incisions, when they have surgery. It does this.
>
> And so -- but I'm not saying that she does. I'm just saying that these are the questions I have to ask when I look at the photograph like that.

ECF No. 43-4, Terranova Depo. 48:1–49:8.

Schaeffer argues that Dr. Terranova's opinion is unreliable under Daubert. Williams argues that Dr. Terranova is permitted to explain other potential causes of the scarring behind Schaeffer's ears as part of his differential diagnosis method, including his opinion that the discoloration might be the result of an autoimmune disease, like scleroderma. The court agrees with Williams.

As discussed in detail above, differential diagnosis is a method by which physicians attempt to explain the medical cause of a certain symptom or issue through the process of elimination. It is well-accepted in both the medical and legal realms as a reliable basis for expert opinion. Therefore, Dr. Terranova may testify that scleroderma or other auto-immune diseases is a possible cause for discoloration of the skin and a

possible cause of the scarring Schaeffer experienced.[1]  For these reasons, the court denies Schaeffer's request to exclude Dr. Terranova's opinion that scleroderma is a possible cause of Schaeffer's skin discoloration.

### 3. Evidence that Schaeffer Threatened Suit

Additionally, Schaffer seeks to exclude any evidence of Schaffer and Williams's post-procedure communications in which Schaeffer threatened to bring suit against Williams.  Schaeffer argues that such evidence should be excluded pursuant to Rule 403.  Williams argues that the post-procedure communications are "relevant to [Schaeffer's] motivations in bringing this lawsuit." ECF No. 53 at 8.  The court agrees that Schaeffer's threats to sue are potentially relevant to the issue of Schaeffer's damages and her credibility.  However, the court is not in a position to weight the probative value of the evidence against its propensity to unfairly prejudice Schaeffer.  Therefore, the court declines to rule on the admissibility of the evidence at this stage and opts to consider the admissibility of such evidence as it arises at trial.

As a summary of the court's resolution of Schaeffer's motion in limine, the court grants Schaeffer's request to excludes evidence of Williams's mental health, except as it may become relevant at trial; denies Schaeffer's request to exclude Dr. Terranova's testimony that scleroderma is a potential cause of Schaeffer's skin discoloration; and declines to resolve Schaeffer's request to exclude evidence of Schaeffer's post-surgery threats to file suit against Williams.

---

[1] At the hearing, the parties agreed that Dr. Terranova would not testify that Schaeffer has, or has ever been diagnosed with, sceloderma.  At the risk of belaboring the point, such testimony would be inadmissible.

### III.  CONCLUSION

For the foregoing reasons the court **DENIES** Williams's motion to exclude, **DENIES** Williams's motion for summary judgment, and **GRANTS IN PART**, **DENIES IN PART**, and **TAKES UNDER ADVISEMENT IN PART** Schaeffer's motion in limine.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 20, 2020
Charleston, South Carolina**