# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| SHAAN SCHAEFFER, | ) |
|                 Plaintiff, | ) |
| | ) No. 2:18-cv-1532-DCN |
|                 vs. | ) |
| | ) **ORDER** |
| HEIDI D. WILLIAMS, MD, LLC, d/b/a | ) |
| HEIDI WILLIAMS PLASTIC SURGERY & | ) |
| RECONSTRUCTIVE SURGERY, and HEIDI | ) |
| D. WILLIAMS, M.D., individually, | ) |
| | ) |
|                 Defendants. | ) |
| | ) |

The following matter is before the court on defendant Heidi D. Williams, MD, LLC and Heidi D. Williams, M.D.'s ("Williams") motion in limine, ECF No. 66, and on Shaan Schaeffer's ("Schaeffer") motion in limine, ECF No. 69. For the reasons set forth below, court denies without prejudice Williams's motion and grants in part and denies in part Schaeffer's motion.

## I.  BACKGROUND

This medical malpractice action arises from a cosmetic surgical procedure performed by Williams on Schaeffer on November 23, 2016. During the procedure, Williams performed a facelift, bilateral upper lid blepharoplasty, and abdominoplasty. Schaeffer alleges that Williams performed the facelift negligently, causing Schaeffer to develop thick scarring behind her ears and excess skin under her chin. Even after following the post-operation treatment regime recommended by Williams for several months, Schaeffer claims, her condition did not improve. Therefore, she opted to undergo corrective surgery to the affected areas on April 5, 2018.

1

On June 5, 2018, Schaeffer filed this lawsuit against Williams, alleging negligence. ECF No. 1. A trial was initially scheduled for March 16, 2020 but has since been continued indefinitely in response to the ongoing COVID-19 pandemic. On March 6, 2020, Williams filed a motion in limine seeking the exclusion of certain evidence. ECF No. 66. Schaeffer responded to the motion on March 11, 2020. ECF No. 70. On March 9, 2020, Schaeffer also filed a motion in limine. ECF No. 69. Williams responded to Schaeffer's motion on March 16, 2020. ECF No. 73. Neither part has filed a reply with respect to its motion. Thus, these matters are now ripe for the court's review.

## II.   DISCUSSION

**A. Williams's Motion in Limine**

Williams's motion in limine requests that the court exclude evidence of "Future Laser Resurfacing" procedures, which Schaeffer intends to introduce as evidence of expected future damages. Williams argues that this evidence is both procedurally improper and substantively inadmissible. For the reasons discussed below, the court denies the motion, but Williams may renew her objection to the evidence at trial.

As a preliminary objection to the evidence, Williams argues that Schaeffer provided untimely notice with respect to this claim of future damages. On March 4, 2020, Schaeffer sent Williams a third supplemental response to Williams's interrogatories in which she updated her itemized list of damages to include "Future Laser Resurfacing" for "approximately $6,000." ECF No. 66 at 2.[1] As Williams points

---

[1] Williams has not presented Schaeffer's interrogatory responses to the court. Therefore, the court quotes Williams' motion in limine, which purports to quote Schaeffer's interrogatory response.

2

out, discovery in this matter closed on October 15, 2019, and trial is set to begin as soon as the court determines that conditions are safe to do so. According to Williams, this "late-breaking attempt to shoehorn in an additional $6,000 in future damages" is unfairly prejudicial to Williams because the damages have been alleged "on the eve of trial" and "months after the close of discovery." Id. at 5. In response, Schaeffer notes that although discovery has closed, the parties consented to extend the discovery deadline and continued to exchange discovery as late as January of 2020. The court finds that the evidence is not time-barred for two reasons. First, as Schaeffer pointed out at the hearing on the motion, the parties informally extended the deadline for discovery on several occasions without formally agreeing to a definite deadline. Moreover, Schaeffer's recent presentation of the evidence has not prejudiced Williams because Williams was aware of the laser resurfacing treatment as a potential source of future damages long before March 3, 2020. On September 10, 2019, Williams deposed Schaeffer's expert, Dr. Hultman, and asked detailed questions about the laser resurfacing treatment, including whether Hultman recommended the treatment, the number of sessions Schaeffer would require, and the cost of the treatment. ECF No. 70-1, Hultman Depo. 51:4–53:5; 108:15–110:11. Therefore, the court finds that Schaeffer's late production of the evidence is not fatal to its admissibility.

  Substantively, Williams argues that evidence of the Future Laser Resurfacing damages are speculative and lack a proper foundation. In response, Schaeffer contends that the evidence is relevant as future expected damages caused by Williams' negligence and that the evidence has a proper foundation based on the deposition of Schaeffer's expert, Dr. Hultman. The court finds that the evidence can be supplemented at trial to

satisfy South Carolina's standard for damages. As such, the court denies the motion without prejudice.

Whether evidence is admissible is a procedural issue that requires the court to employ federal law. Under the Federal Rules of Evidence, the touchstone of admissibility is relevancy. See Fed. R. Evid. 402 ("Relevant evidence is admissible . . . ."). In its application of the federal rules, however, the court must consider the state law on which the alleged relevancy of the evidence is premised. In South Carolina, "[n]either the existence, causation, nor amount of damages can be left to conjecture, guess, or speculation." Carlyle v. Tuomey Hosp., 407 S.E.2d 630, 633 (S.C. 1991).

Schaeffer argues that excerpts of Dr. Hultman's deposition provide a proper foundation for the "Future Laser Resurfacing" evidence, including the following exchange:

> Q. And did you make any recommendations as a result of your evaluation of her?
>
> A. Yes. I recommended that if she wanted to improve her scars around her ears, then laser therapies might be helpful.
>
> Q. And help me understand what that laser therapy involves.
>
> A. We have two different types of lasers that can treat surgical scars like this. The first type of laser is a pulsed dye laser that is used for red scars that may be raised and thick and itchy by subjective sensation. And then we have a fractional $CO_2$ laser which is good for scars that are a little bit more mature that are thick and stiff. And so the combination of those two lasers will result in improvement in almost all patients. It doesn't eliminate the scars, but it makes their appearance and texture and pliability better.

ECF No. 70-1, Hultman Depo. 51:4–22. Schaeffer argues that Dr. Hultman's testimony also supports the $6,000 figure she wishes to present to the jury.

4

> Q. Do you know how much it would cost to have this laser treatment that you just discussed?
>
> A. I'm not familiar with the Hopkins information, but at University of North Carolina, these sessions were approximately $2,000 per session of the reimbursed fees from insurance companies, and this would have been for burn scars. So these were the fees that we also selected for cosmetic lasers. So this could cost her, you know, $6,000 for three sessions. But there may be additional fees here at Hopkins that would make that more expensive, or less.

Id. at 109:14–25.

Williams argues that this evidence of the Future Laser Resurfacing is too speculative in two regards. First, Williams argues that evidence of the cost is too speculative. The court disagrees. In South Carolina, "[f]uture damages do not need to be proved to a mathematical certainty." Pearson v. Bridges, 524 S.E.2d 108, 111 (S.C. Ct. App. 1999), aff'd, 544 S.E.2d 617 (S.C. 2001). So long as the evidence of the cost of future damages is beyond "mere speculation," it can be awarded to a medical malpractice plaintiff. Id. Dr. Hultman is an expert in the field of cosmetic and regenerative procedures of the skin, and he testified to the cost of the Future Laser Resurfacing procedures based on what they would cost at the hospital at which he used to practice. Therefore, his testimony is well beyond "mere speculation" and may provide a sufficient basis for the $6,000 figure Schaeffer wishes to present to the jury.

Second, Williams argues that evidence of the Future Laser Resurfacing treatment is too speculative with respect to causation. Causation between Williams's alleged negligence and the Future Laser Resurfacing treatment in this case refers to whether the treatment is necessary to make Schaeffer whole, that is, whether it is necessary to put her in the position she would have been in but for Williams's alleged negligence. Dr. Hultman has testified that he recommends the treatment given the nature of Schaeffer's

scarring. As Williams points out, however, Dr. Hultman does not testify that the treatment would be necessary to remedy Scaheffer's scarring but rather that "if [Schaeffer] wanted to improve her scars around her ears, then laser therapies might be helpful." ECF No. 70-1, Hultman Depo. 51:6–8. The court admits that Dr. Hultman's testimony does endorse the necessity of the treatments with any great clarity. However, that fact alone does not provide a reason for the court to exclude the evidence as inadmissible.

Defendants are correct that evidence of damages in South Carolina "should allow the court or jury to determine the amount of damages with reasonable certainty or accuracy." Gauld v. O'Shaugnessy Realty Co., 671 S.E.2d 79, 85 (S.C. Ct. App. 2008). However, this standard does not govern the admissibility of each individual piece of evidence. Rather, it governs whether a plaintiff's evidence of damages, taken as a whole, is too speculative and uncertain to justify presenting the issue to the jury. Of course, it is the cumulative effect of the evidence of a particular type of damage, not each single piece of evidence, that must meet this standard. Although Dr. Hultman's deposition testimony alone falls short of constituting "reasonably certain" evidence of causation, Dr. Hultman may clarify his testimony at trial or Schaeffer may present additional evidence during trial that provides a sufficient basis for the evidence to be submitted to the jury. Moreover, alleged uncertainties surrounding a piece of evidence can be addressed on cross-examination. Therefore, the court denies Williams's motion in limine without prejudice.

### B. Schaeffer's Motion in Limine

Before the court considers the substance of Schaeffer's motion, it addresses Williams's preliminary procedural objection to the motion. Williams argues that Schaeffer's motion in limine is time-barred because the amended scheduling order set the deadline for motions in limine on January 9, 2020. Schaeffer filed her initial motion in limine on that day, and filed the instant motion in limine, her second, on March 9, 2020. Of course, Williams also filed her pending motion in limine after the January 9, 2020 deadline, on March 6, 2020. ECF No. 66. Resolving the apparent hypocrisy, Williams explains that she filed her motion in limine in response to new damages Schaeffer claimed only two days earlier, on March 4, 2020, well after the amended scheduling order's discovery deadline. The court finds that Schaeffer's motion is not time-barred for two reasons. First, the court set the initial deadline for motions in limine in order to provide the parties with adequate time to resolve evidentiary issues before the eve of trial. Given the fact that trial has been continued due to circumstances well beyond the parties control, the deadline has ceased to serve that purpose. Second, the court expects that if it were to decline to consider the substance of Schaeffer's motion at this juncture, Schaeffer would simply lodge the same objections during trial, when the court would be constrained to rule on them without the benefit of the time and thorough consideration the issues warrant. As such, the court finds it in the best interest of all involved to resolve it here and now.

Turning to the substance of the motion, Schaeffer requests that the court exclude two categories of documents, both of which are contained within Schaeffer's medical chart. First, Schaeffer asks that the court exclude the informed consent forms that

Schaeffer signed prior to her procedure. Second, Schaeffer asks the court to exclude documents contained in a "Preparing Your Surgery" packet that relate to avoiding post-procedure litigation and managing "emotional and physical reactions" to cosmetic procedures. The court addresses each in turn, granting in part and denying in part the motion.

### 1. Informed Consent Forms

Schaeffer seeks to exclude the informed consent forms that Schaeffer signed as a prerequisite to her procedure, which served to notify Schaeffer of the risks associated with her surgery. Schaeffer argues that the informed consent forms are not relevant to her negligence claim against Williams because Schaeffer "does not allege lack of informed consent . . . ." ECF No. 69 at 3. In response, Williams argues that "[t]he fact that [Schaeffer] elected this course of treatment knowing that she could have unfavorable scarring, lack of satisfaction with the result, and the need for additional surgery thereafter is relevant and is worth consideration by the jury." ECF No. 73 at 5.

"Relevant" evidence is that which "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 provides that the court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." The Fourth Circuit has long commanded that "the threshold for relevancy is relatively low," United States v. Van Metre, 150 F.3d 339, 349 (4th Cir. 1998), and that "to be admissible, evidence need only be worth consideration by the jury or have a plus value,"

United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003) (quoting United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997)) (internal quotation marks omitted).

Schaeffer's complaint alleges that Williams was negligent in performing the procedure at issue. Therefore, Schaeffer argues, the only relevant question in this case is whether Williams deviated from the standard of care during that procedure. Schaeffer's argument improperly narrows the scope of relevant facts in this case. To be sure, Schaeffer is correct that the issue of whether Williams obtained informed consent is not directly relevant to whether Williams deviated from the standard of care. However, Schaeffer's claim places the treatment relationship between Schaeffer and Williams directly at issue. To properly defend against Schaeffer's negligence claim, Williams should be permitted to present evidence of the full scope of that relationship, including evidence that she informed Schaeffer of the complications associated with her procedures. While the issue of Schaffer's knowledge of the risks of surgery does not directly have a bearing on the narrow issue of whether Schaeffer deviated from the standard of care during the procedure, the informed consent forms are a piece of the puzzle that sheds light on the comprehensive doctor-patient relationship between Schaeffer and Williams. Certainly, then, the evidence is worth consideration by the jury and provides the jury with a "plus value" to determine the ultimate issue. Of course, the informed consent forms are not evidence that Schaeffer consented to negligent conduct, nor do they absolve Williams from liability should the jury find that she deviated from the standard of care. Instead, they provide the jury with probative evidence of the treatment relationship between Williams and Schaeffer, which Williams may develop to show that she was not negligent.

## 2. "Preparing Your Surgery" Packet

Schaeffer seeks to exclude as irrelevant portions of a "Preparing for Your Surgery" packet, which was prepared by Williams for Schaeffer's pre-surgery review and outlines several pre- and post-operation patient considerations. Specifically, Schaeffer seeks exclusion of the documents within the packet entitled "Avoiding Litigation" and "Emotional and Physical Reactions." The Avoiding Litigation documents outline steps that a patient and physician might take if the patient is unhappy with the results of the procedure but does not want to resort to litigation, and the Emotional and Physical Reactions document describes the range of emotions a cosmetic surgery patient might feel after surgery and reactions he or she might garner as a result of the procedure.

Williams argues that the Preparing for Your Surgery packet is relevant to show that "Williams approached this procedure with care and competence and in compliance with the standard of care." ECF No. 73 at 8. In other words, Williams contends that the Preparing for Your Surgery packet is relevant for the same reason that the Informed Consent forms are relevant, because it provides a more comprehensive picture of the doctor-patient relationship between Williams and Schaeffer and more clearly presents the extent of the care Williams provided. For the same reasons the court discussed with respect to the Informed Consent forms, it agrees with Williams that the Preparing for Your Surgery Packet is relevant. As such, the court finds that the Emotional and Physical Reactions document is admissible.[2]

---

[2] For the sake of clarification, this document is attached to Schaeffer's motion in limine as Exhibit C.

However, because the Avoiding Litigation documents provide limited probative value and have the potential to confuse the jury or unfairly prejudice it against Schaeffer, the court grants the motion in part. The Avoiding Litigation documents include statements with a clear bias against medical malpractice plaintiffs, such as:

> Litigation can create anxiety, hostility, anger, and greed—none of which are healthy emotions. Perhaps worst of all, once patients decide to sue, they then WANT TO HAVE A BAD RESULT AND WANT TO HAVE INCREASED POSTOPERATIVE COMPLICATIONS to justify their legal actions and increase the possibility of secondary gain. In doing so, they rob themselves of the potential benefits for which they sought surgery in the first place.

ECF No. 69-2 at 3 (emphasis in original). This evidence is hardly probative of the treatment relationship between Williams and Schaeffer, as the language seeks to dissuade patients from pursuing litigation but does little in terms of providing a patient with treatment advice or post-operative care. Further, the documents make outwardly biased statements against medical malpractice plaintiffs in general, which could confuse the jury or unfairly prejudice it against Schaeffer by virtue of her exercising her right to seek relief for her alleged damages. Therefore, the court grants the motion with respect to the Avoiding Litigation documents pursuant to Rule 403.[3]

In sum, the court denies without prejudice Williams's motion in limine and grants in part and denies in part Schaeffer's motion in limine. Specifically, the court finds that the Informed Consent forms and Emotional and Physical Reactions document are admissible and excludes the Avoiding Litigation documents.

---

[3] For the sake of clarification, these documents are attached to Schaeffer's motion in limine as Exhibit B.

### III. CONCLUSION

For the reasons set forth above, the court **DENIES** Williams's motion and **GRANTS IN PART** and **DENIES IN PART** Schaeffer's motion.

**AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**July 13, 2020**
**Charleston, South Carolina**